UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br>　　　　　Plaintiff(s), <br><br>　　　v. <br><br>STEPHEN HARD <br><br>　　　　　Defendant(s). <br>_____ | CASE NO. SA CR 08-00177 DOC <br><br> **O R D E R** GRANTING FIRST <br>**MOTION IN LIMINE** |

Before the Court is Defendant Stephen T. Hard ("Hard")'s First Motion in Limine (the "Motion"), which moves for an order excluding the evidence referenced in the Government's First Notice of Intent to Admit Evidence Pursuant to Rule 404(b) filed on August 4, 2009. After considering the moving and opposing papers and parties' oral argument, and after reviewing the relevant evidence in the jury's absence, the Court hereby GRANTS the Motion.

**I.　　Background**

The Government seeks to introduce evidence that Hard and his alleged co-conspirator Brad Lee ("Lee"), developed a scheme to defraud Exousia Foundation Ltd. ("Exousia") during

the Fall of 2004 and Winter of 2005 (the "Exousia Transaction" or "Exousia Agreement"). Unlike the scheme for which Hard is presently charged (the "Indictment Transaction"), the Exousia Transaction was never consummated. Nonetheless, the Government argues that Lee's testimony regarding the Exousia Transaction and, in addition, three electronic mail communications from Hard to Lee, should be admitted to prove Hard's knowledge and intent in the commission of the Indictment Scheme.

First, the Government seeks to introduce a January 14, 2005 email from Hard to Lee, in which Hard forwarded a January 12, 2005 email from Philip Sagona ("Sagona") to Hard. The January 12, 2005 email from Sagona attached the January 11, 2005 "Minutes of the Special meeting of the Board of Directors of Exousia Foundation, Ltd.," which memorialized Sagona's appointment as one of Exousia's Managers of Investments and Sagona's designation as Director of Investments of Exousia.

Second, the Government seeks to introduce a January 14, 2005 email from Hard to Lee, in which Hard forwarded a January 12, 2005 email from Sagona to Hard. The January 12, 2005 email from Sagona to Hard claimed to contain the account information for a bank account at UBS.

Third, the Government seeks to introduce a January 14, 2005 email from Hard to Lee, which attached a draft agreement between Lee and Exousia ("Proposed Exousia Agreement"). The Proposed Exousia Agreement in relevant part obligated Lee to secure the "private placement" of $5 Billion of Exousia's funds held at the Union Bank of Switzerland ("UBS").

**II.    Legal Standard**

Federal Rule of Evidence 404(b) in relevant part provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." The Ninth Circuit has held that evidence of other acts, including "bad acts," is admissible under Rule 404(b) when: (1) there is sufficient proof for the jury to find the defendant committed the other act; (2) the other act was not too remote in time; (3) if used to prove intent,

the other act must be similar; and (4) it must be used to prove a material issue. *See United States v. Bailleaux*, 685 F.2d 1105, 1110 (9th Cir. 1982).

**III. Discussion**

    **1. Sufficient Proof of the Exousia Transaction**

The Government concedes that the Exousia Transaction was inchoate, in that Hard drafted the Proposed Agreement that was ultimately not signed by the parties. However, the evidence that Hard contemplated the Exousia Transaction and prepared for its consummation is incontrovertible, in light of the previously described Proposed Agreement, as well as the emails from Hard to Lee and Sagona to Hard.

Of more concern is the Government's failure to use the evidence of the Exousia Agreement as an additional predicate fact in support of the Indictment's charge of conspiracy. As previously mentioned, the Exousia Transaction involved the same principals (Lee and Hard), involved an alleged scheme to defraud, and involved an investor. The Court recognizes that the Proposed Exousia Agreement and the agreement at issue in the Indictment Transaction bear many common features, including identical clauses with regard to the promised return on investment and low risk. It would appear to flow from these facts that the Exousia Agreement was yet one more instance, during the time frame in question, in which Hard and Lee conspired to defraud. Yet, the Government inexplicably failed to allege the scheme in the Indictment, and when questioned about its failure to do so at oral argument, Government's counsel conceded that he was unaware of any good reason to exclude the Exousia Agreement from the Indictment. The Court does not consider this fact dispositive to the present Motion, but is baffled by the tactical decision to not allege these facts, but rather seek to admit them belatedly under the more exacting standards of Federal Rule of Evidence 404(b).

    **2. Remoteness**

Neither party argues that the Exousia Agreement, and related communications, were remote from the Indictment Transaction. Indeed, the emails concerning the Exousia Agreement were being exchanged while the Indictment Transaction was in its final stages. However, as the Court discusses below, the relative closeness of the Exousia Agreement and Indictment

3

Transaction in this case in fact decreases the probative value of the Exousia Agreement in proving Hard's knowledge and intent during the commission of the Indictment Transaction.

### 3. Similarity

The Exousia Agreement and Indictment Transaction are similar as a matter of form only. The Proposed Exousia Agreement and the contract at issue in the Indictment Transaction include similar provisions regarding the rate of return and level of risk. The similarities end there, largely as a result of the fact that the Exousia Agreement was never consummated.

More specifically, the Government argues that evidence of the Exousia Agreement demonstrates that Hard intended to defraud the CCG investors both prior to and after the Indictment Transaction had been completed. Not so. First, the fact of the Exousia Agreement is consistent with Hard's claim that Lee directed him to issue such investment agreements to a variety of investors, including CCG and Exousia. Second, unlike the Indictment Transaction, the Exousia Agreement evidence includes no correspondence between Hard and investors, whether Exousia or Sagona, lulling them into a false sense of security about the soundness of their investment.

The Government's fraud allegations arise not out of the contract that precipitated the Indictment Transaction. To the contrary, those allegations concern Hard's state of mind when effecting the Indictment Transaction as well as his actions and intent following the Indictment Transaction's consummation. In effect, the evidence of the Exousia Agreement shows similarity with respect to the least important of the Government's predicate facts – the existence of a draft contract. The Government has produced no evidence showing similarity with respect to the relevant predicate facts for fraud and conspiracy.

### 4. Materiality

Evidence of the Exousia Transaction has little, if any, probative value. The Government argues that Hard drafted the Exousia Agreement with the knowledge that the principals of CCG: "(1) had not received a single penny on their $1 million investment; (2) had repeatedly asked for the return of their money; and (3) had threatened to go to the authorities if they did not receive their money back immediately." The Government more generally argues that the Exousia

4

Transaction demonstrates Hard's willingness to continue his relationship with Lee even after the CCG investors were allegedly defrauded.

The Government's evidence includes no correspondence between Lee and Hard, in which Hard demonstrated knowledge and intent even with respect to the Exousia Transaction. Nor does the evidence include any correspondence between Hard and Sagona relating to any knowledge or intent regarding the Exousia Transaction, or any other transaction. Thus, the Court is left to consider: (1) whether the mere fact of the Exousia Transaction is probative as to Hard's knowledge and intent at the time of the Indictment Transaction; and (2) whether Lee's proposed testimony about the Exousia Transaction is probative as to Hard's knowledge and intent at the time of the Indictment Transaction. Neither is the case.

First, the Government's evidence does not suggest knowledge and intent to defraud in the context of the Exousia Transaction, let alone the Indictment Transaction.

Second, to the extent that the Government seeks to use Lee's testimony to substantiate the relevance of the Exousia Transaction, the Court agrees with Hard that such evidence is cumulative. *See United States v. Boyd*, 446 F.2d 1267, 1270-71 (5th Cir. 1971). Though the Government argues (and the Court agrees) that the *Boyd* case is distinguishable – there, the court excluded more evidence of the same underlying crime, while here, the Government seeks the introduction of evidence of a separate act – these distinctions only offer further reason for the Exousia Transaction's exclusion. Were the Government to offer evidence that Hard furthered the Indictment Transaction even after the CCG principals expressed reservation and called for its termination, that could help demonstrate his intent to defraud. But the Government merely seeks evidence that Hard attempted to draft an agreement for an entirely new institutional investor, with no reference or connection to the Indictment Transaction.

**5. Prejudice**

The immediate prejudice that would result to Defendant is apparent. The Court does not agree with Hard's unsubstantiated claim that the jury would be prejudiced by the Exousia Proposal, "because it involved a non-profit religious foundation." However, evidence of the Exousia Transaction, while it may not arouse the religious sympathies (if any) of the jury,

5

nonetheless demonstrates Hard's continued correspondence with Lee, who is incarcerated and who both parties agree facilitated both fraudulent schemes. Even though Hard may have been an unwitting participant in the Exousia Transaction, his continued association with Lee, and the implications of that association, constitute classic character evidence that is not generally admissible under Federal Rule of Evidence 404(b). *See Old Chief v. United States*, 519 U.S. 172, 181, 117 S. Ct. 644 (1997).

### III. Disposition

For the foregoing reasons, the Court hereby GRANTS the Motion.

IT IS SO ORDERED.

DATED: November 16, 2009

_____
DAVID O. CARTER
United States District Judge